**Richmond**

ALVIN PRESLEY ROBERTSON

v.

COMMONWEALTH OF VIRGINIA

No. 0990-92-2

Decided July 5, 1994

COUNSEL

James B. Thorsen (Thorsen, Page & Marchant, on brief), for appellant.

Richard B. Smith, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**BRAY, J.**—Alvin Presley Robertson (defendant) was convicted by a jury for the rape and sodomy of his infant daughter. He complains on appeal that the prosecution unconstitutionally exercised its peremptory challenges to remove black and male venirepersons. For the reasons which follow, we disagree and affirm the convictions.

Because the assigned error relates solely to procedural aspects of the proceeding below, we recite only those facts pertinent to that issue.

Following voir dire, the prosecutor peremptorily struck one black female, Wright, a white male, Blanock, and two black

males, Miller and Randolph, from the venire and similarly removed one black male from among three possible alternate jurors.[1] Defendant argued to the trial judge that these peremptory challenges were impermissibly motivated by "racial and gender" considerations and not "good articulable reason[s]." Although defendant failed to incorporate his concerns into either an objection or motion, the court and Commonwealth engaged the issue as a race and gender-based equal protection challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986).

In *Batson*, the Supreme Court reaffirmed a defendant's "right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria" and denounced the peremptory exclusion of potential jurors "on account of race" as violative of the Equal Protection Clause. *Id.* at 85-86.[2] Recently, in *J.E.B. v. Alabama ex rel. T.B.*, ____ U.S. ____, 114 S. Ct. 1419 (1994), the Court extended this protection to embrace "[i]ntentional discrimination" by "state actors" "on the basis of gender." *Id.* at ____, 114 S. Ct. at 1422.[3]

*Batson* and its progeny have outlined the procedures in the trial court necessary to resolve an allegation of discriminatory conduct in jury selection, which have since been often recognized and applied by the appellate courts of this Commonwealth. These protocols were just recently succinctly restated in *James v. Commonwealth*, 247 Va. 459, 442 S.E.2d 396 (1994).

> The defendant must make a *prima facie* showing that the prosecutor has exercised peremptory strikes on the basis of race. *Powers v. Ohio*, 499 U.S. at 409. If this showing is made, the burden shifts to the prosecutor to articulate a racially neutral explanation for striking the jurors in question. *Batson*, 476 U.S. at 96-97. If the court determines that the

---

[1] The trial jury was comprised of eight black females, one white female, one black male, and two white males, a ratio of black representation which actually exceeded that of the panel.

[2] This doctrine now applies to both criminal and civil litigation, potential jurors, and all litigants. *Georgia v. McCollum*, ____ U.S. ____, 112 S. Ct. 2348, 2351 (1992); *see generally Powers v. Ohio*, 499 U.S. 400 (1991); *Edmondson v. Leesville Concrete Co.*, 500 U.S. 614 (1991).

[3] Although *J.E.B.* was decided after the instant case was briefed and argued before this Court, the trial court and counsel foretold the decision and also addressed the gender issue.

proffered reasons are . . . [race and gender] neutral, the defendant should be afforded an opportunity to show why the reasons, even though facially . . . neutral, are merely pretextual and that the challenged strikes were based on race [or gender]. *United States v. Joe*, 928 F.2d 99, 103 (4th Cir. 1991). But, ultimately, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *Batson*, 476 U.S. at 98.

■ Clearly, *Batson*'s "proof structure" requires a defendant, confronted with a facially neutral explanation for a prosecutor's peremptory strikes, "to show both that these reasons were merely pretextual and that race [or gender] was the real reason." *United States v. McMillon*, 14 F.3d 948, 953 (4th Cir. 1994). *See also Hill v. Berry*, 247 Va. 271, 274-75, 441 S.E.2d 6, 8 (1994); *Buck v. Commonwealth*, 247 Va. 449, 451, 443 S.E.2d 414, 415 (1994); *Broady v. Commonwealth*, 16 Va. App. 281, 285, 429 S.E.2d 468, 471 (1993). The trial court is not required "to seek out and evaluate information or evidence not utilized by either party . . . in the absence of . . . counsel's identification of a false or pretextual reason for the peremptory strikes." *Buck*, 247 Va. at 453, 443 S.E.2d at 416. The burden of "proving that the prosecution engaged in purposeful discrimination" remains with the defendant and may not be shifted to the trial court. *Id.*

Here, the trial court responded properly to defendant's challenge of the Commonwealth's peremptory strikes and required the prosecutor to provide "racially" and "sexist neutral reasons" for her conduct. Without contesting the implicit finding by the trial court that the defendant had established a prima facie case of willful discrimination,[4] the prosecutor explained that she removed venirepersons Wright, Blanock, and Randolph because each was "single," not "a parent." Addressing the related gender issue, the prosecutor observed that it simply "turned out that most of the males were not parents." She further noted that venireperson Miller "did not seem to be involved, even at this stage of the proceedings." The trial judge agreed that Miller exhibited a detached "attitude and demeanor and appearance."

---

[4] The "actual sequence of events at trial" oftentimes "merges the separate procedural steps" incidental to a *Batson* challenge and analysis. *James*, 247 Va. at 462, 442 S.E.2d at 398. However, this "[c]onsolidation . . . does not invalidate the process as long as . . . [it] does not adversely impact the rights of any party." *Id.*

At the conclusion of the prosecutor's representations to the court, defendant noted that Miller was "nicely, neatly" dressed, "seemed otherwise attentive," and argued that Miller's "silence" during voir dire was "no indication [that] he shouldn't be with us." Without specificity, defendant characterized the prosecutor's explanation for removing the other jurors in issue as "poor, at best," and, again, generally protested the racial and "sexual makeup" of the petit jury and the race/gender ratios of the prosecutor's strikes. In response, after acknowledging defendant's "objection," the trial judge "enter[ed] a finding that the reasons advanced by the Commonwealth for her strikes [were] racially . . . and sexually neutral."

■■■ "In evaluating the race [and gender] neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law." *Hernandez v. New York*, 500 U.S. 352, 359 (1991). If the explanation is constitutionally acceptable, the "decisive question" before the trial judge then becomes "whether counsel's . . . explanation . . . should be believed." *Id*. at 365. "[O]nce that has been settled, there seems nothing left to review." *Id*. at 367. A "trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal," *id*. at 364, and this decision will not be reversed unless clearly erroneous. *Id*. at 369; *James*, 247 Va. at 462, 442 S.E.2d at 398; *Barksdale v. Commonwealth*, 17 Va. App. 456, 460, 438 S.E.2d 761, 763 (1993). This standard of review logically recognizes the trial court's unique opportunity to observe and evaluate "the prosecutor's state of mind based on demeanor and credibility" in the context of the case then before the court. *Hernandez*, 500 U.S. at 365; *see Barksdale*, 17 Va. App. at 460, 438 S.E.2d at 763-64.

Here, the prosecutor offered facially neutral, nondiscriminatory reasons for striking venirepersons Miller, Wright, Blanock, and Randolph, which correctly prompted the judge to call upon defendant for a response. Defendant, however, disputed the prosecutor's explanations only with respect to venireperson Miller, asserting that he was "nicely, neatly dressed" and "seemed otherwise attentive." This argument was obviously intended to counter the Commonwealth's observation that Miller had exhibited an indif-

ference to the proceedings, a view shared by the court. Defendant's references to Miller's clothing and demeanor "otherwise" offer nothing to discredit the facially neutral "sensory perceptions" of the court and prosecutor which are "relevant and appropriate considerations" in an assessment of the prosecutor's actions and reasoning. *Barksdale*, 17 Va. App. at 461, 438 S.E.2d at 764. Manifestly, disinterested jurors should be identified and removed whenever possible, irrespective of race or gender.

Defendant's characterization of the prosecutor's explanations for her strikes of the remaining venirepersons in issue as "poor" was insufficient to establish pretextual surrogates intended to disguise an impermissible discriminatory purpose. Although defendant argues on appeal that the prosecutor's explanations for striking venirepersons Wright, Blanock, and Randolph were unsupported or contradicted by the record, these contentions were not presented to the trial court and will not be considered by this Court for the first time on appeal. Rule 5A:18; *Hogan v. Commonwealth*, 5 Va. App. 36, 44-45, 360 S.E.2d 371, 376 (1987); *see Buck*, 247 Va. at 453, 443 S.E.2d at 416.

Accordingly, we are unable to conclude that the trial court was plainly wrong in finding that defendant failed to sufficiently prove the requisite purposeful discrimination in this instance, and we affirm the convictions.

*Affirmed.*

Baker, J., and Barrow, J., concurred.